UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD TURNER,

    Plaintiff,

v.

UNITED STATES, et al.,

    Defendants.

Case No. 17-cv-02265-WHO

**ORDER DENYING MOTIONS TO DISMISS**

Re: Dkt. Nos. 9, 16

## INTRODUCTION

Plaintiff Ronald Turner alleges that after he met with defendant Dr. Tracie Rivera at a Veterans Clinic, Dr. Rivera negligently disclosed confidential medical information, causing worsening of plaintiff's medical condition, loss of employment, and humiliation. He brings suit against Dr. Rivera and her employer, Locumtenens.com, LLC ("Locumtenens"), for medical malpractice, and against the United States Department of Veterans Affairs under the Federal Tort Claims Act ("FTCA"). The questions I must answer on defendants' motions to dismiss are whether Turner's claims were timely filed. Because Turner has diligently pursued his claims in good faith and defendants have shown no prejudice, I DENY the motions to dismiss.

## BACKGROUND

### I. Factual Background

Turner is a Marine Corps veteran. *See* First Amended Complaint ("FAC") [Dkt. No. 7] Ex. B ("Additional History"). He was diagnosed with Post Traumatic Stress Disorder by the Veteran's Administration in San Bernadino, CA. *Id.* On May 5, 2014, while employed by the United States Forest Service, he visited the Veteran's Resource Center in Eureka, California, where he met with his Veterans Counselor Andrew McLaughlin. FAC ¶ 5a; *id.* Ex. B. Despite his insistence that he would not harm anyone and was well aware of the consequences of doing so,

Turner alleges that McLaughlin pressed him to describe who he would hurt if he were to hurt someone, to which plaintiff responded his supervisor. FAC ¶ 5a. McLaughlin developed a crisis plan for Turner and suggested that he contact the Eureka Veterans Clinic to meet with the new psychiatrist. *Id.*

On May 14, 2014, Turner met with Dr. Tracie Rivera at the Eureka Veterans Clinic. FAC ¶ 5b. He claims that there was no indication that Dr. Rivera was not an employee of the Veterans Administration. *Id.* Turner explained that he was following a crisis plan, continuing to meet with his counselor, and feeling better. *Id.* He reiterated that he "had no desire or intent to harm anyone." *Id.* He was calm throughout the appointment. *Id.*

The following day, he received a phone call from Dr. Rivera informing him that the treatment team at the clinic made the decision "to warn the appropriate entities about [his] harmful thoughts." *Id.* ¶ 5c. After consulting with the legal team, Dr. Rivera made disclosures to Turner's supervisor, William VanAuken, as well as the Redding Police Department. *Id.* Dr. Rivera also contacted the Redding Police Department and informed Officer Devin Ketel that Turner threatened to murder his supervisor, setting off a series of meetings between various police personnel, Turner's supervisor, and other employees from the U.S. Forest Service. FAC ¶ 5d. Turner was ultimately terminated from his employment on an undisclosed date, most likely between May and August of 2014. *Id.*

**II.      Procedural Background**

On October 21, 2014, Turner filed a complaint with the Office for Civil Rights within the Department of Health and Human Services to initiate an investigation into the two disclosures made by Dr. Rivera. *See* FAC Ex. D ("Administrative Actions"). The Office for Civil Rights accepted the complaint on January 15, 2015, and responded on August 5, 2016 that the initial disclosure "had been addressed with training" but there was no record of the second disclosure. *See id.* Turner submitted a FOIA request with the Office for Civil Rights for the investigative file on September 5, 2016. *Id.* On April 5, 2017, a member of the Department of Health and Human Resources e-mailed plaintiff with a status update, indicating that the investigative file was in the Department's possession, and was being assigned to an analyst who would inform Turner when

2

those documents were ready for shipment. *Id.* He has yet to receive those documents.

Turner separately filed, on May 12, 2016, a claim with the Office of General Counsel of the Department of Veterans Affairs. *See* FAC Ex. D. On October 21, 2016, the Department mailed a response, received on October 24, indicating that Dr. Rivera was not a VA employee but rather an employee of their contractor, Locumtenens.[1] *Id.* He contends that he did not know that Dr. Rivera was not an employee of the Department of Veterans Affairs until receipt of this letter. *See* FAC ¶ 5b.

On November 8, 2016, Turner sent two notices via certified mail to Locumtenens and Dr. Rivera of his intent to file suit. *Id.* Ex. D. He also filed a second FOIA request with the Department of Veterans Affairs for the investigative file and clarifying information on the work status of Dr. Rivera on November 20, 2016. *Id.* On March 7, 2017, the Department submitted 14 pages of 41 documents, denying him access to the remainder. *Id.*

Turner filed this suit, pro se, on April 24, 2017. *See* Complaint [Dkt. No. 1]. He sent the Complaint for filing via overnight mail using United Parcel Service on April 20, 2017; he asserts that a massive landslide blocked Highway 101 between Humboldt County and San Francisco that day. Dkt. No. 21, p.2. Delivery was attempted at 9:28 a.m. on Friday, April 21, 2017, which would have been timely. *Id.* But the federal building in San Francisco was closed as a result of a fire that caused an electrical outage in the area of the courthouse. Delivery occurred on Monday, April 24, 2017, when the federal building reopened.

## LEGAL STANDARD

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

---

[1] While plaintiff received the letter on October 24, plaintiff's allegations are unclear as to the date of that letter. The timeline of administrative actions lists without further explanation October 21, 2016 in association with the letter, and the Department asserts in its motion to dismiss that the letter was dated October 21, 2016. *See* Compl. Ex. D; VA Dep't Mot. [Dkt. No. 16] at 1. Because this date appears on plaintiff's administrative actions list and plaintiff does not dispute that it is the correct date of the letter in his opposition, I construe the date of the letter to be October 21, 2016.

3

the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Additionally, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Indeed, the court must afford a *pro se* litigant "the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

**DISCUSSION**

**I.     United States Department of Veterans Affairs' Motion to Dismiss**

The U.S. Department of Veterans Affairs ("the Department") moves to dismiss Turner's FTCA claim for untimeliness. The FTCA states that "[a] tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The Department mailed Turner notice of denial of his claim on October 21, 2016, triggering the six month statute of limitations ending on April 21, 2017. His suit was filed three days late, on April 24, 2017.

Turner contends that the statute of limitations should be equitably tolled. *See Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1035 (9th Cir. 2013) (holding that § 2401(b) is subject to equitable tolling). Under federal law, a plaintiff seeking equitable tolling must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id.* at 1052. The first element requires "reasonable diligence" and that plaintiff be "without any

4

fault in pursuing his claim." *Id.* (internal quotation marks omitted). With regards to the second element, "[e]quitable tolling is typically granted when litigants are unable to file timely [documents] as a result of external circumstances beyond their direct control." *Id.*

Contrary to the Department's assertions, there is nothing wrong with Turner attempting to file his claim on the day it was due to be filed, nor is the time of day relevant. As the administrative actions timeline shows, he has diligently pursued his claim since its accrual, seeking information through various avenues and following all of the requisite procedures. *See* FAC Ex. D. This is especially noteworthy given that he has pursued these claims without the assistance of counsel. But for the fire and electricity outage closing the federal building, Turner's complaint would have been filed in a timely manner, and his diligence would not be in dispute. The Department would have had UPS seek all alternative routes to avoid road closures, call alternative courthouses, and attempt to file Turner's complaint in any courthouse that would accept it. *See* Reply at 4. But equitable tolling does not require this type of "overzealous or extreme pursuit of any and every avenue of relief." *Kwai Fun Wong*, 732 F.3d at 1052.

The federal building's unexpected closure due to the fire and electricity outage constitutes "extraordinary circumstances" sufficient to toll the statute of limitations. While the Ninth Circuit found that the district court did not err in denying equitable tolling in *Okafor v. United States*, in that case plaintiff had no excuse but the delivery company's delay. 846 F.3d 337, 340 (9th Cir. 2017). Here, the delivery company was not to blame, but rather the federal building itself was closed no matter the method of the delivery. Likewise, *Sack v. U.S. Department of Health and Human Services* is also easily distinguishable. No. 16-cv-05505-MEJ, 2017 WL 2472952 (N.D. Cal. June 8, 2017). There, plaintiff claimed that the extraordinary circumstance was defendant's bad faith, but the record lacked any support for that assertion and instead revealed plaintiff's own failure to act. *Id.* at *5. In the present case, plaintiff has sufficiently alleged "external circumstances beyond [his] direct control" warranting equitable tolling. *Kwai Fun Wong*, 732 F.3d at 1052.

While the Department is correct that plaintiff's First Amended Complaint makes no reference to the allegations supporting his equitable tolling argument, I find that the doctrine of

5

equitable tolling applies. Given that Turner has both alleged and evidenced in his Opposition and supporting exhibits that he can show the required elements to support the application of equitable tolling, because I can and do take judicial notice of the fact that the federal building in San Francisco was closed on April 21, 2017 because it had no electricity, and since the Department has had the opportunity to challenge the facts asserted by Turner and rebut his argument and failed to do so persuasively, in the interest of judicial efficiency I will not require the pro se plaintiff to file an second amended complaint merely to assert these facts. I DENY the Department of Veterans Affairs' motion to dismiss.

## II. Locumtenens and Dr. Rivera's Motion to Dismiss

Locumtenens and Dr. Rivera too bring a motion to dismiss the California medical malpractice claim against them based on untimeliness. California law provides that:

> in an action for injury . . . against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person.

Cal. Code Civ. Proc. § 340.5. While the statute allows for tolling in only three circumstances, courts have also applied California's doctrine of equitable tolling to the statute. *See, e.g.*, *Warne v. City and Cty. of San Francisco*, No. 16-cv-06773-JSC, 2017 WL 2834050, at *7–9 (N.D. Cal. June 30, 2017) (denying motion to dismiss claim under § 340.5 based on equitable tolling of statute of limitations); *Gray v. Romero*, No. 1:13-cv-01473, 2017 WL 220238, at *5 (E.D. Cal. Jan. 18, 2017) (applying equitable tolling doctrine to § 340.5 claim); *Righetti v. Cal. Dep't of Corrections and Rehabilitation*, No. C-11-2717 EMC, 2012 WL 4742801, at *7–8 (N.D. Cal. Oct. 3, 2012) (same); *Thomas v. Gilliland*, 95 Cal. App. 4th 427, 433–37 (2002) (discussing application of equitable tolling in context of § 340.5 claim); *but see Lantzy v. Centex Homes*, 31 Cal. 4th 363, 380 (2003) (stating, in dicta, that the Legislature could have expressly disallowed equitable tolling in one statute "as in section[] 340.5 (health care malpractice)").

Under California law,[2] "application of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Addison v. State of Cal.*, 21 Cal. 3d 313, 319 (1978). As the Ninth Circuit has "acknowledged[,] the analysis of California's equitable tolling doctrine, particularly on the issue of prejudice to defendant, generally requires consideration of matters outside the pleadings. As a result, only in the rare case could the inquiry proceed at the pleading stage." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001).

Turner discovered his injury in 2014 and did not file suit until April of 2017, well beyond the one-year statute of limitations. Locumtenens and Dr. Rivera assert that Turner's pursuit of a FTCA claim cannot toll the statute of limitations under Section 340.5, arguing that California case law has disallowed claims brought under the California Tort Claims Act ("CTCA") to toll the statute of limitations. But they do not address the doctrine of equitable tolling, the relevant issue here.

Turner has pleaded sufficient allegations to establish that equitable tolling may apply, at least to survive the motion to dismiss. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation."). On November 8, 2016, only two weeks after he discovered that Dr. Rivera was an employee of Locumtenens on October 24, 2016, Turner notified both defendants via certified mail of his intent to file a lawsuit. *See* FAC Ex. D. Moreover, Dr. Rivera had reason to know of his intent to file suit as early as October of 2014, when Turner filed a complaint with the Office for Civil Rights to initiate an investigation into Dr. Rivera's two disclosures. *See id.* Given that Dr. Rivera had reason to know all along, and that Turner notified Locumtenens as soon as he discovered its involvement, there is no prejudice to either defendant, nor have they argued otherwise. Finally, Turner has acted reasonably and in good faith, and his allegations establish that he has diligently pursued his claims with respect to

---

[2] "Along with the limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th Cir. 2001).

7

the information available to him at any given time. The record establishes that he followed the procedures in a timely manner for filing a FTCA claim, which he believed was the applicable statute to Dr. Rivera, up until October of 2016 when he learned otherwise. *Id.* Using October 24, 2016 as the date from which the statute of limitations began running on his Section 340.5 claim, his filing of this lawsuit on April 24, 2017 was well within the one-year time limit.

While Locumtenens and Dr. Rivera cite *Roberts v. Cty. of Los Angeles*, 175 Cal. App. 4th 474 (2009) for the proposition that the CTCA's tolling provisions do not apply to Section 340.5, Turner does not argue and I do not conclude that pursuit of a FTCA claim may toll Section 340.5's statute of limitation. Instead, I conclude that Turner has stated a plausible claim for equitable tolling of the statute of limitation, which was not considered in *Roberts*, nor did the plaintiff in *Roberts* discover previously unknown information affecting her claims after the statute of limitation had run as Turner has here. Should additional information suggesting that he had reason to know of Dr. Rivera's employment status or Locumtenens' involvement earlier than October of 2016, defendants are welcome to revisit the issue. At this stage, however, I DENY Locumtenens and Dr. Rivera's motion to dismiss.

## CONCLUSION

For the foregoing reasons, I DENY the United States Department of Veterans Affairs' motion to dismiss as well as Locumtenens and Dr. Rivera's motion to dismiss. Defendants shall answer within 20 days. A Joint Case Management Conference Statement shall be filed by November 21, 2017 and the Case Management Conference is set for November 28, 2017 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: October 13, 2017

William H. Orrick
United States District Judge