UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD TURNER,

           Plaintiff,

    v.

UNITED STATES, et al.,

           Defendants.

Case No. 17-cv-02265-WHO

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 65, 76

## INTRODUCTION

Plaintiff Ronald Turner alleges that after he met with defendant Dr. Tracie Rivera at Eureka Community Based Outpatient Clinic ("Eureka CBOC"), a medical clinic operated by the United States Department of Veterans Affairs ("United States" or "VA"), Dr. Rivera negligently disclosed Turner's confidential medical information to his supervisor and the police, resulting in a worsening of Turner's medical condition, loss of employment, and humiliation. He brings this action against Dr. Rivera, Locumtenens.com, LLC ("Locumtenens"), and LT Medical, LLC for medical malpractice under California law and against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*. The United States moves for summary judgment on the FTCA claim, arguing that because Dr. Rivera was not a United States employee during her time at Eureka CBOC, the United States cannot be held liable for her actions. Because I conclude that, for the purposes of the FTCA, Dr. Rivera was an independent contractor, I GRANT the United States's motion for summary judgment.

## BACKGROUND

Turner alleges that Dr. Rivera negligently disclosed his confidential health information to his employer and the police. *See generally* Second Amended Complaint ("SAC") (Dkt. No. 80). At the time of the alleged disclosure, Dr. Rivera was working at the Eureka CBOC pursuant to a

contract between the United States and Locumtenens.  Declaration of Julie Bibb Davis ISO United States's Motion for Summary Judgment, Ex. A (Dkt. No. 65-2).  The contract outlined the United States's requirements for the contract psychiatrist position, which would be filled by Locumtenens, as well as the obligations of Locumtenens as a party to the contract.  These terms included a list of general duties for the contract psychiatrist at Eureka CBOC, *id.* at 4, and the obligations of Locumtenens as to said psychiatrist, *id.* at 10.  Further, the contract required that Locumtenens provide the psychiatrist with workers compensation, professional liability insurance, income tax withholding, and Social Security payments.  *Id.*  Concerning the relationship between the United States and the psychiatrist, the contract explicitly states that the hired psychiatrist would be an independent contractor and that the United States "may evaluate the quality of professional and administrative services provided, but retains no control over the medical, professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment)."  *Id.* at 13.

Prior to bringing this action, Turner filed an administrative tort claim with the United States, which was denied because the United States determined that Dr. Rivera was an independent contractor.  First Amended Complaint, Ex. A (Dkt. No. 1).  Turner subsequently brought this action in the Northern District of California, and the United States moves for summary judgment.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial."  *Id.*  The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that

party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

The United States moves for summary judgment on the ground that Dr. Rivera was an independent contractor while employed at Eureka CBOC, meaning that the United States is not liable under the FTCA. Mot. at 3-6 (Dkt. No. 65). The FTCA provides a limited waiver of the United States's sovereign immunity, allowing the government to be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). It is the exclusive remedy for torts committed by federal employees during the course and scope of their employment. 28 U.S.C. § 2679(b)(1); *see Brandes v. United States*, 783 F.2d 895, 896 (9th Cir. 1986) ("The FTCA does not, however, entirely waive the sovereign immunity of the United States: the federal government may only be held liable for damages caused by the negligent or wrongful act or omission of a government employee."); *see also United States v. Orleans*, 425 U.S. 807, 813 (1971) (noting that the FTCA only extends to government employees and was "never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people").

Whether an individual is a government employee for purposes of the FTCA is a question of federal law. *Brandes*, 783 F.2d at 896; *see Logue v. United States*, 412 U.S. 521, 528 (1973). In determining whether an individual is an independent contractor or an employee, courts analyze the degree of control government officials exercise over the performance of the individual. *See Logue*, 412 U.S at 527–28. The test is "not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are

3

supervised by the Federal Government." *Orleans*, 425 U.S. at 815.

The Ninth Circuit considered the question of whether a private physician on contract at a government facility was a government employee for the purposes of the FTCA in *Carrillo v. United States*, 5 F.3d 1302 (9th Cir. 1993). The doctor in *Carrillo* was employed by Pediatric Providers but worked in a pediatrics clinic at Madigan Army Medical Clinic ("Madigan") pursuant to a contract between Pediatric Providers and Madigan. In affirming the district court's conclusion that the doctor was an independent contractor, the Ninth Circuit noted that, although Madigan regulated the doctor's administrative duties and hours, "neither Madigan nor any other agency of the federal government had any control over [his] practice of medicine." *Id*. at 1305. The doctor, therefore, was not a government employee under the FTCA.

Based on the record in this case, I conclude that, for the purposes of the FTCA, Dr. Rivera was an independent contractor. Like the doctor in *Carrillo*, Dr. Rivera was employed pursuant to an agreement between the United States and a contractor, Locumtenens. *See* Davis Decl., Ex. A. Locumtenens had an agreement with the United States to provide a psychiatrist for mental health services at Eureka CBOC. *Id.* at 3. The contract explicitly stated that the hired psychiatrist would be an independent contractor. *Id.* at 13 ("[P]rofessional services rendered by [Locumtenens] or its health-care providers are rendered in its capacity as an independent contractor."). It required that Locumtenens provide Dr. Rivera with workers compensation, professional liability insurance, income tax withholding, and Social Security payments. *Id.*, Ex. A at 10. It states that while the United States "may evaluate the quality of professional and administrative services provided," it "retains no control over the medical, professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment)." *Id.* Further, the United States did not pay Dr. Rivera's salary and her timesheets were submitted to and approved by Locumtenens. Davis Decl., Ex. B (Dkt. No. 65-3).[1]

---

[1] Turner points to the Ninth Circuit's decision in *Edison v. United States*, 822 F.3d 510 (9th Cir. 2016) to argue that, even if Dr. Rivera is not a government employee, the United States owed him a duty of care to protect his privacy pursuant to the Privacy Act of 1974 and the independent contractor exception, therefore, does not apply and the United States should be held liable for Dr. Rivera's disclosure. *Edison* has no bearing on this case. It held that, because the plaintiffs were seeking to hold the government directly liable for its own inaction and not vicariously liabile for

Despite these undisputed facts, Turner argues that the United States controlled aspects of Dr. Rivera's day-to-day practice such that she was an employee. Specifically, he points out that her hours were monitored by a government employee, that her patients were limited to those at the VA, that she discussed whether to disclose the information at issue regarding Turner with a team of government employees prior to making the disclosure of Turner's private information, and that she could not bill for her services or refer patients outside of the VA. But the United States may "fix specific and precise conditions to implement federal objectives" without becoming liable for an independent contractor's torts. *United States v. Orleans*, 425 U.S. 807, 816 (1971). There must be "substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee." *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987) (citation omitted). Turner fails to identify any evidence that suggests "substantial supervision" on the part of the United States. Instead, the evidence Turner highlights demonstrates the imposition of broad general parameters that were largely set by the contract between the United States and Locumtenens. This is not enough to establish that the United States had sufficient control over Dr. Rivera's professional judgment to make her an employee of the United States.

Turner also argues that there is a dispute of fact over who employed Dr. Rivera. Turner states that while the United States argues that Dr. Rivera was a Locumtenens's employee, Locumtenens has represented that another entity, LT Medical, LLC employed Dr. Rivera. Turner contends that the United States's relationship with Dr. Rivera cannot be determined until he has discovery and possession of all of the relevant contracts and documents that led to Dr. Rivera working at Eureka CBOC. This is incorrect. Although there may be some dispute about which entity employed Dr. Rivera, a genuine issue does not exist concerning whether she was an employee of the United States. As discussed above, the evidence establishes that Dr. Rivera was an independent contractor of the United States, not an employee. That the other defendants also

the actions of its independent contractors, the district court erred when concluding that the independent contractor exception prevented it from exercising jurisdiction over the case. *Id.* at 518. Here, Turner seeks to hold the United States liable for the actions of Dr. Rivera. This type of vicarious liability was not addressed in *Edison*.

claim that Dr. Rivera was not their employee does not change her relationship with the United States. It also does not preclude summary judgment in the United States's favor on Turner's FTCA claim.

Turner contends that because Dr. Rivera was not licensed in California when she treated Turner, she should be considered an employee of the VA under California law. He argues that because Dr. Rivera was not licensed to practice when she saw him as a patient, she potentially violated California Business and Professional Code section 715(b) (providing that a doctor can practice in California without a license so long as, "[t]he person practicing a profession or rendering services does so solely pursuant to a contract with the federal government on a federal reservation or at any facility wholly supported and maintained by the United States government.") In Turner's view, because Dr. Rivera was not licensed, the plain meaning of the statute dictates that either Dr. Rivera had a contract with the United States, which would imply an employer-employee relationship, or she was in violation of this section, which would open up the United States to liability for negligently hiring Dr. Rivera.

Section 715(b) does not support Turner. Dr. Rivera was practicing in California pursuant to the contract between the United States and Locumtenens, and was practicing at a federal facility (as allowed under the statute). No language in Section 715(b) requires that the practicing doctor be a party to the contract that forms the basis of the general licensing exception. This argument does not create a material dispute of fact as to the relationship between Rivera and the United States.

Turner also seemingly asserts that because neither the United States nor Dr. Rivera disclosed that she was an independent contractor, despite multiple opportunities to do so, both the United States and Dr. Rivera "represented her as an employee and/or at a minimum an agent of the [United States]." Turner suggests that, given such representations, the United States should be estopped from now arguing that Dr. Rivera was not an employee of the United States. But equitable estoppel is a doctrine that is rarely valid against the government. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59–61 (1984) (explaining that the burden to assert equitable estoppel against in government is "heavy"). "In addition to the traditional

6

elements of estoppel, a party seeking to raise estoppel against the government must establish affirmative conduct going beyond mere negligence.  Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. *Carrillo*, 5 F. 3d at 1306 (internal citations and quotations omitted).  Turner identifies no evidence of any affirmative misrepresentations or concealment of a material fact by the government concerning Dr. Rivera's employment status that resulted in harm against him.  The United States is not estopped from asserting that Dr. Rivera was an independent contractor during her time at Eureka CBOC.

Relatedly, Turner relies on *Mejia v. Community Hospital of San Bernardino*, 99 Cal. App. 4th 1448, 1454-55 (2002), for the proposition that a failure to clearly identify who employs a physician makes a medical center liable for that physician's conduct.  But *Mejia* addresses California law of ostensible agency, which provides that, when considering a hospital's vicarious liability for the acts of a physician working at the hospital, a physician is considered an agent (opening the hospital to liability based on the physician's tortious actions) where a patient has no reason to think that the physician is not an agent of the hospital.  99 Cal. App. 4th at 1557.

California's law of ostensible agency is irrelevant to this Order.  The FTCA provides the exclusive remedy for tortious claims against the United States; whether an individual is a government employee or an independent contractor under the FTCA is a question of federal law, not California law.  *See Logue*, 412 U.S. at 528.

Turner also implies that because Dr. Rivera consulted with several federal employees concerning whether to disclose Turner's confidential information, the United States should be held liable for such disclosures.  But Dr. Rivera's consultation with government employees is not sufficient to impose liability onto the United States, especially given that the harm that Turner alleges—disclosure of his confidential information—stemmed from Dr. Rivera's actions, not those of the federal employees with whom she consulted.   That Dr. Rivera spoke with federal employees prior to making the disclosures that form the basis of the action does not change the fact that Dr. Rivera was not a government employee during her time at Eureka CBOC; it is her actions that are the basis of Turner's lawsuit.  As discussed above, the United States is not liable

for her actions as an independent contractor.

In sum, there is no genuine issue of fact concerning whether Dr. Rivera was an employee of the United States during her employment at Eureka CBOC. There was no contract between the United States and Dr. Rivera. The contract between the United States and Locumtenens expressly stated that Dr. Rivera was considered an independent contractor and that the United States did not have any control over the medical, professional aspects of services rendered. That the United States placed broad conditions on Dr. Rivera's employment does not mean that it exercised "substantial supervision" over her professional decisions. Turner has not presented any evidence that disputes those facts. Accordingly, I conclude that, for the purposes of the FTCA, Dr. Rivera was a United States independent contractor during her time at Eureka CBOC. Summary judgment in the favor of the United States is appropriate.[2]

## CONCLUSION

For the reasons discussed above, I GRANT the motion for summary judgment of the United States.

**IT IS SO ORDERED.**

Dated: July 10, 2018

William H. Orrick
United States District Judge

---

[2] Turner filed an administrative motion to file under seal certain documents in support of his opposition to the United States's motion for summary judgment. Dkt. No. 76. Per Local Rule 79-5(e), as designating party, the United States was obligated to file a declaration establishing that all of the designated material is sealable within four days of the filing of the administrative motion to seal. It has failed to do so. I ORDER that the United States file the appropriate declaration within 10 days of this Order, establishing a compelling justification for sealing the documents. If it fails to do so, the administrative motion to seal will be DENIED.