UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD TURNER,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED STATES, et al.,<br><br>   Defendants. | Case No. 17-cv-02265-WHO<br><br>**ORDER ON MOTIONS IN LIMINE AND OTHER TRIAL-RELATED MATTERS** |

This Order follows argument on the parties' Motions in Limine and related legal issues raised at the Pretrial Conference on February 25, 2019. I start with the arguments concerning the amendment of the complaint to assert explicitly claims for violation of the Confidentiality of Medical Information Act ("CMIA"), public disclosure of private facts, and for false light invasion of privacy (the "additional claims"), because these are central to the trial.

Defendants argue that plaintiff Ronald Turner cannot amend his complaint at this late date to allege the additional claims, reasoning that they would be prejudiced by not having had a chance to do discovery and move for summary judgment on them. Turner represented himself pro se until his current counsel took the case on a pro bono basis on the eve of trial, and while Turner did not articulate the additional claims in the way his lawyer has, this case has always been about Dr. Rivera's disclosure of Turner's private information.

I would not normally preclude Turner from alleging the additional claims, but I do so in exercise of my discretion for the following reasons. The additional claims all flow from the same factual predicate--Dr. Rivera's disclosure of Turner's private information because of her asserted belief that she had a duty to warn under Civil Code § 43.92. The case turns on whether Turner communicated a serious threat of physical violence to her in her professional capacity, a

requirement under Civil Code § 43.92. I conclude below that MICRA would apply to all of the claims because Dr. Rivera's decision was directly related to the professional services she provided. The liability determination would be the same under each claim, and so would the remedies. Allowing Turner to present four essentially identical claims with different names risks jury confusion. At worst, it is prejudicial to the defendants. At best, it is meaningless to Turner. The discussion below explains why, and in the process I deny Plaintiff's Motion in Limine #4 and grants Defendants' Motion in Limine #6.

Central to my analysis is the applicability of MICRA to all the additional claims. MICRA limits damages to no more than $250,000 for non-economic losses in "any action for injury against a health care provider based on professional negligence[.]" Cal. Civ. Code § 3333.2. This raises two questions that the parties dispute. First, is Dr. Rivera a health care provider? Second, are Turner's claims based on her professional negligence?

A "health care provider" is defined as including persons who are licensed or certified by the state to practice medicine. *Id.* at § 3333.2(c)(1). MICRA is meant to be interpreted expansively because of the strong public policy to lower the cost of health care in California by reducing insurance premiums, and courts have interpreted it to cover health care providers lawfully rendering medical services pursuant to an express exception in the licensing regime. *Chosak v. Alameda Cty. Med. Ctr.*, 153 Cal. App. 4th 549, 567 (2007) (unlicensed optometry student found to be a healthcare practitioner pursuant to an exception). California Business and Professions Code § 715(b) creates an exception to the licensing requirement for health care providers practicing solely pursuant to a contract with the federal government, on a federal reservation, or at any facility wholly supported and maintained by the United States government. Because the Eureka Veterans Administration clinic, where Dr. Rivera worked, is a facility wholly supported and maintained by the federal government, Dr. Rivera is a health care provider for the purposes of MICRA.

"Professional negligence" is defined as a "negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury[,] . . . provided that such services are within the scope of services for which the

2

provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." Cal. Civ. Code § 3333.2(c)(2). In arguing that the additional claims provide non-MICRA remedies, Turner points out that in certain circumstances intentional torts based on the same conduct can serve as the basis for both MICRA and non-MICRA claims. *Waters v. Bourhis*, 40 Cal. 3d 424, 437 (1985) (finding that sexual assault by psychiatrist could support both MICRA and non-MICRA claims). In order to determine if a plaintiff's claims fall under MICRA, courts ask whether the claims flow or originate from a healthcare provider's negligent act or omission. *See Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 187–188, fn. 3.

Defendants point to *Hedlund v. Superior Court*, 34 Cal. 3d 695 (1983) as relevant authority. In *Hedlund*, the California Supreme Court found that MICRA applied in a *Tarasoff* failure to warn case despite that the duty to warn was based on ordinary negligence because the diagnosis of the dangerous behavior "and the appropriate steps necessary to protect the victim are not separate or severable, but together constitute the duty giving rise to the cause of action." *Id.* at 703-704. Although Turner contends that *Hedlund* should no longer apply after the enactment of California Civil Code § 43.92, it is routinely cited by both federal and state courts as an example of how a failure to warn claim involves professional negligence subject to MICRA. For example, in *Sloan v. Marin Speciality Surgery Ctr.*, the California Court of Appeal, citing *Hedlund*, determined that a clinic's failure to provide a wheelchair to a surgery patient who fell attempting to leave the facility on clinic supplied crutches constituted professional negligence because the negligent act occurred in the rendering of services for which the clinic was licensed. No. A124831, 2010 WL 2543621, at *3 (Cal. Ct. App. June 23, 2010). In *Unruh-Haxton v. Regents of Univ. of California*, a case about a fertility clinic that allegedly stole and sold patients' eggs and pre-embryos, the California Court of Appeal cited *Hedlund* as an example of a case where a plaintiff's legal theory based on something other than medical malpractice was subject to MICRA. 162 Cal. App. 4th 343, 353 (2008). In *Romar ex rel. Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, the District Court for the Eastern District of California discussed *Hedlund* in the context of determining whether a disparate screening claim under the federal Emergency Medical Treatment

3

and Labor Act ("EMTALA") fell under MICRA. 583 F. Supp. 2d 1179, 1188 (E.D. Cal. 2008). *Hedlund* remains good law on this point.

Turner cites *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341 (N.D. Cal. 1997) and *Flores v. Natividad Med. Ctr.*, 192 Cal. App. 3d 1106 (Ct. App. 1987) to argue that the additional claims should not fall under MICRA. In *Jackson*, the plaintiff brought claims pursuant to both state law and EMTALA in relation to the death of her husband. *Id.* at 1343. The court cited but did not follow the state law precedent because it was reluctant to condition the federal substantive cause of action (EMTALA) on the reasoning in *Central Pathology*, a case that explicitly involves a state procedural requirement. 980 F. Supp. at 1349. Here, there is no such federal substantive cause of action; *Jackson* does not help Turner.

In *Flores*, a prisoner patient sued certain doctors, a medical center, a county, and the State of California for medical negligence and for failure to summon medical care pursuant to California Government Code § 845.6. 192 Cal. App. 3d at 1110. The court found that MICRA applied to both claims as to the doctors but not to the State because the failure to summon aid claim was a distinct claim (not based on professional negligence, because "the State is immune from liability for such negligence of its employees.") *Id.* at 1116. Here, all of Turner's claims inherently flow from Dr. Rivera's allegedly negligent conduct, as the court held with respect to the two doctors in *Flores*. Accordingly, all of Turner's claims are subject to MICRA.

Because the facts proving liability for each claim and the remedy Turner could achieve for each claim are identical, there is no purpose in requiring the jury to wade through separate instructions on liability for four claims. The task would be legally and practically pointless and the risk of jury confusion would be high. Repetition of claims against defendants might have a prejudicial effect; a verdict on all four claims in Turner's favor would not increase his damages recovery (and a verdict on some but not all of the claims might well result in an inconsistent verdict and mistrial). It would waste time. Accordingly, I will not allow Turner to proceed on the additional claims at trial and would deny the alternative request to amend.

This determination affects the amount of damages Turner may recover in a second way--MICRA alters the collateral source rule in medical malpractice cases. *Cuevas v. Contra Costa*

4

*Cty.*, 11 Cal. App. 5th 163, 172 (Ct. App. 2017). A medical malpractice defendant may introduce evidence of "any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services." *Id.* (citing Cal. Civ. Code § 3333.1(a)). Because all of Turner's claims are subject to MICRA, the collateral source rule does not apply. If defendants introduce evidence of Turner's collateral source benefits, Turner may introduce evidence of any payments made to obtain these benefits. *Id.*

Accordingly, plaintiff's motion in limine #4 is denied and defendants' motion in limine #6 is granted. I address the remaining motions in limine below.

**PLAINTIFF'S MOTIONS IN LIMINE**

#1. Grant. I have previously concluded, following *Ewing v. Northridge Hosp. Med. Ctr.*, 120 Cal. App. 4th 1289 (2004), that whether Turner communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims is a question of fact for the jury. Testimony about what the law requires in this regard is inadmissible; I will instruct the jury on the law. On the other hand, testimony on the standard of care is admissible.

#2. Grant. Defendants must choose between the two experts they propose to call, Mr. Quinby and Dr. Vinogradov, because their testimony would be cumulative and duplicative and would waste time under Federal Rule of Evidence 403.

#3. Grant. The restraining order proceeding is irrelevant and unduly prejudicial and is excluded under Rule 403. The relationship between Van Auken and Turner is only relevant to the extent Dr. Rivera learned about it prior to disclosing the information.

#5. Grant, as agreed by the parties. Dr. Rivera may testify on her consideration of Turner's status as a veteran to the extent it was relevant to her decision to disclose.

**DEFENDANTS' MOTIONS IN LIMINE**

#1. Denied. Dr. Vieten may testify as an expert on the standard of care. Defendants may

cross-examine her on her alleged lack of expertise regarding the duties of California practitioners.

#2. Grant. The question of whether medication prescribed to Turner caused the "behavioral complaints" about him is irrelevant to the issues in this case and testmony about it is excluded under Rule 403.

#3. Denied. Plaintiff may offer evidence, and cross-examine Dr. Rivera, concerning McLaughlin and Reeves's lack of reporting a threat of physical violence by Turner to the authorities or Turner's supervisor.

#4. Denied in part. It is true that Dr. Rivera's state of mind is relevant, and what Turner said, as opposed to what he was thinking, is most probative. However, his state of mind is relevant to his testimony to corroborate what he remembers saying. Mrs. Turner's understanding of his state of mind may also be relevant to corroborate her telephone conversation with Dr. Rivera before the disclosure was made.

#5. Denied. Testimony regarding Turner's absence of a history of violence is relevant to explore the assumptions Dr. Rivera may have made regarding his military history (see plaintiff's MIL #5).

#7. Granted in part. Turner may not argue that any judgment against defendants would be paid by insurance, but he may introduce the agreement between Dr. Rivera and Locumtenens and explore the terms as part of the evidence of employment or agency.

#8. Granted. The parties shall not refer to settlement discussions. If it becomes relevant, Turner may show that he delivered a written notice of intent to sue on November 8, 2016.

#9. Granted, absent the testimony of a person with knowledge from the VA of the relationship between Dr. Rivera and Locumtenens.

#10. Denied, in light of the VA's policy and the training Dr. Rivera may have received concerning it.

#11. Denied. The failure of Locumtenens and Dr. Rivera to produce tax and other records to support their theory of their relationship may be explored (and explained).

**IT IS SO ORDERED.**

Dated: February 26, 2019

William H. Orrick
United States District Judge